783 P.2d 795
**Francis Jack HEALEY,
Plaintiff/Appellee/Cross–Appellant,**

v.

**Pete J. COURY and Karen Coury, husband and wife; and Coury Construction Company, an Arizona corporation, Defendants/Appellants/Cross–Appellees.**

Nos. 2 CA–CV 89–0033,
2 CA–CV 89–0034.

Court of Appeals of Arizona,
Division 2, Department B.

June 20, 1989.

Review Denied Dec. 19, 1989.

Burger, Gibson, Matheson, Whitney & Weber by Franklin K. Gibson and Robert J. Weber, Mesa, for plaintiff/appellee/cross-appellant.

Jennings, Strouss & Salmon by Jefferson L. Lankford and Donn G. Kessler, Phoenix, for defendants/appellants/cross-appellees.

## OPINION

FERNANDEZ, Judge.

This case involves the breach of an oral contract of employment. Both parties appeal from the judgment, entered after a jury verdict, that awarded $61,200 to appellee. Appellant also appeals from an order denying its motion for relief from the judgment brought pursuant to Rule 60, Ariz.R. Civ.P., 16 A.R.S.

Appellee Jack Healey sued appellant Coury Construction Company and its shareholders, Pete and Karen Coury, for breach of an oral contract. Healey sued after he demanded his share of certain profits in May 1984, and Coury denied they had entered into a contract. The complaint also sought treble damages pursuant to the Arizona Racketeering Act (RICO), A.R.S. §§ 13–2301 through 13–2317, alleging theft by false pretenses and by fraudulent scheme or artifice.

During the course of the trial, the court granted a directed verdict against Healey on the RICO claim and dismissed the claims against the Courys as individuals.

Healey was a bank appraiser in the State of Washington until 1975 when he retired and began spending winters in Arizona. Cross-appellees Karen and Pete Coury are Healey's sister and brother-in-law. Pete Coury is in the real estate and construction business in Mesa. Through Coury Construction Company, he had acquired a large parcel of land in Mesa that he planned to subdivide. Healey testified that, during a 1975 visit to Phoenix, he told Coury he could make more money on the property by developing a recreational vehicle (RV) park on the site. Healey testified that in December 1976 or January 1977 he and Coury Construction agreed that Healey would gather information about developing an RV park and Coury Construction would pay him 10% of the "net operating income" from the park *or* 10% of the "increase in value" of the property. Healey also testified that Coury Construction promised him 10% of the annual net operating income *and* 10% of the profits when the property was sold. Healey testified he prepared a written agreement, but Coury never signed it.

Subsequently, Coury Construction leased the property to a third party who began developing it into an RV park. When the park was partially developed, the lessee declared bankruptcy. Following lengthy legal proceedings, Coury Construction reacquired the property and completed development of the RV park. Healey testified that he gathered information and made numerous suggestions about the design and operation of the park, that he prepared several booklets about the park and that he contacted lenders about obtaining funding. He also testified he worked many hours at the park during the winters from 1976 through May 1984. In addition, Healey testified that he flew from Washington several times during the summers to assist Coury with RV park business matters. According to Healey, Coury Construction reimbursed him for the costs of those trips. Healey also presented evidence that Coury Construction purchased a car for him to use, and Coury agreed with that evidence. Several people who had worked for Coury Construction testified that Healey had

worked on plans and that he had spent a lot of time at his office in the park.

Coury denied that the company and Healey had entered into an agreement and that Healey had performed most of the work he claimed to have done. Coury Construction introduced 47 checks for $150 each that it gave Healey from December 1982 through May 4, 1984. Each is marked "Consultant Fee." Coury Construction also introduced copies of a number of other checks paid to Healey over the years as reimbursement for supplies he had bought for the park. Coury testified that the $150 checks constituted a weekly salary the company paid Healey for reading park utility meters and performing other odd jobs. Several witnesses, including other RV park employees and persons involved with the park's design and construction, testified that Healey performed little work for the RV park, had little or no input in the design, was given "busy work," such as reading meters, and had not gathered information or prepared documents.

At the end of the three-and-one-half week trial, the court submitted interrogatories to the jury. The jury found that Healey and Coury Construction had entered into an oral contract, that the terms of the contract were that Healey was to receive 10% of the annual net profits *and* 10% of the sale price less the costs of development and sale, and that Healey had performed his duties under the contract. The jury then awarded Healey damages of $61,200 through May 4, 1984, the date on which he demanded payment from Coury.

In its judgment, the court ordered Coury Construction to provide annual accountings and to pay Healey 10% of the annual net profits, if any, of the RV park, beginning May 4, 1984 and continuing until the park is sold. If the park is sold, Coury Construction is to pay Healey 10% of the profit from the sale less the costs of development and sale.

In its appeal, Coury Construction contends as follows: 1) there is no contract as a matter of law because the terms are too indefinite, or because it is barred by the statute of frauds and even if there is a contract, the action is barred by the statute of limitations; 2) insufficient evidence was presented to support either the jury's finding that a contract existed or the amount of damages awarded; 3) the court erred in instructing the jury that Coury Construction's access to the evidence shifted the burden of proof; 4) the order for an accounting and for damages accruing after May 1984 is void because it exceeds the jury's verdict; and 5) the accounting order is improper because Healey failed to show that his remedy at law was inadequate.

## IS THERE A CONTRACT?

Coury Construction contends that no contract existed as a matter of law, raising the following issues: 1) the terms of the alleged agreement were too indefinite; 2) the alleged contract is barred by the statute of frauds; and 3) the alleged contract is barred by the statute of limitations. In determining these issues, this court must view the evidence in the light most favorable to sustaining the verdict of the trial court. *Maxwell v. Aetna Life Insurance Co.*, 143 Ariz. 205, 693 P.2d 348 (App.1984).

### 1) *Are the Contract Terms Definite?*

■ Coury Construction argues that the terms of the alleged contract were not shown with reasonable certainty and that the agreement Healey described was "extremely vague." It complains that Healey neither testified to the meaning of the terms "net operating income" and "increase in value" nor produced evidence as to their meaning under accepted accounting practices. Finally, Coury Construction contends that Healey's testimony as to his performance was too indefinite.

In addition to his own testimony, Healey introduced copies of documents that he prepared when he was gathering information about the park. Those exhibits included collections of data gathered about other RV parks, three booklets he prepared for use in planning and developing the park, a booklet he prepared to obtain release of the real estate from the bankruptcy court, documents from a tax appeal Healey prosecuted that resulted in a reduction in the

park's assessed valuation, lists of proposed changes to architectural and engineering plans for the park, drawings of designs for RV utility hookups, and drawings for suggested realignment of the streets within the park. Healey testified that Coury asked for his help in determining if it were economically feasible to develop the site into an RV park. Healey also stated that Coury told him he wanted Healey to advise him in the areas of architecture, engineering and economics. We find that Healey's testimony was sufficiently definite on the issue of his required contract performance.

Although Healey's evidence was somewhat indefinite as to the meaning of the terms for payment under the contract, he did testify that he was to be paid 10% of the profits of the park. He testified that, in May 1984, he told Coury that he wanted to be paid his share because the park had become profitable. He also testified that his share upon the sale of the park was to be calculated by deducting from the sales price the value of the property at the time of the contract, the costs of sale and the amount of the outstanding first mortgage.

■ Because an oral contract was involved, the trier of fact was required to resolve any conflict in the testimony regarding the terms of the agreement. *Wadin v. Czuczka,* 16 Ariz. 371, 146 P. 491 (1915). We find the evidence sufficient both as to the meaning of the terms and the terms themselves.

## 2) *The Statute of Frauds.*

■ Coury Construction first argues that, because the park took four years to develop, the contract is barred by the statute of frauds provision prohibiting suits on oral contracts that are "not to be performed within one year from the making thereof." A.R.S. § 44–101(5). Arizona courts follow the general rule interpreting that provision to mean "impossible to be performed within one year." *Co-Op Dairy, Inc. v. Dean,* 102 Ariz. 573, 575, 435 P.2d 470, 472 (1967). Accord *Edward Greenband Enterprises v. Pepper,* 112 Ariz. 115, 538 P.2d 389 (1975). If an oral agreement can possibly be performed within in one year, the statute of frauds does not apply. *Waugh v. Lennard,* 69 Ariz. 214, 211 P.2d 806 (1949). The agreement in this case could have been performed within one year. The fact that it took longer does not mean it is barred by the statute of frauds.

■ Coury Construction next argues that A.R.S. § 44–101(6), the statute of frauds provision requiring that transfers of interests in real property be in writing, bars the oral contract, citing *Fremming Construction Co. v. Security Savings & Loan Association,* 115 Ariz. 514, 566 P.2d 315 (App.1977). In that case, this court held that an oral contract to provide mortgage funds was within the statute of frauds because a mortgage promises to make the lien holder the owner of an interest in land. In this case, however, Healey has never claimed any interest in the real property, only an interest in the profits from the park's operation. Coury Construction's breach of the agreement does not result in any transfer of its ownership in the property.

## 3) *The Statute of Limitations.*

■ Coury Construction contends that an action on an oral contract must be brought within three years of the date the parties enter into a contract. Because Healey testified that the contract was made in December 1976 or January 1977, Coury Construction argues that suit should have been filed by January 1980 to be timely under A.R.S. § 12–543. We disagree. There is no basis for Coury Construction's contention on when the cause of action arose. Because the company's performance of its contract obligations was dependent upon the RV park making a profit or being sold, this case falls within the general rule that "a cause of action accrues whenever one person may sue another." *In re Estate of Musgrove,* 144 Ariz. 168, 169, 696 P.2d 720, 721 (App. 1985); *Cheatham v. Sahuaro Collection Service, Inc.,* 118 Ariz. 452, 577 P.2d 738 (App.1978). Therefore, the cause of action arose and the statute of limitations began to run in May 1984 when Healey demanded payment and Coury Construction refused

to pay. Because the complaint was filed in April 1985, it was timely.

## IS THE VERDICT SUPPORTED BY THE EVIDENCE?

■ Coury Construction first questions the jury's determination that a contract existed, arguing that Healey's claim that there was a contract was not corroborated and that his claimed performance was contradicted by many witnesses. Healey presented sufficient evidence to create a conflict on that issue, and the jury resolved the conflict.

Coury Construction next challenges the monetary award, contending that there was no evidence that the RV park ever had any net operating income and that Healey failed to show the amount of his damages with reasonable certainty, citing *Gilmore v. Cohen*, 95 Ariz. 34, 386 P.2d 81 (1963).

Coury Construction did not maintain separate records on the income and expenses of the park as opposed to the income and expenses of its other construction and real estate activities. The company's tax returns were introduced to support the contention that the park had never made a profit. No profit was ever reported to the IRS. The tax returns for the years 1977 through 1984 show no tax was ever paid.

The tax returns reflected large deductions for interest on promissory notes that Coury claims the company owes to Coury's friends and family members. Its accountant testified that the company paid small amounts of interest on the notes but rewrote the notes each year and added the amount of unpaid interest to the principal. The company's financial statement of February 28, 1977 shows only three notes payable to financial institutions and none to Coury's family members. Its July 1, 1980 financial statement shows, in addition to the mortgage on the RV park, only a $47,000 note to Western Savings & Loan secured by a mortgage on a vacation home. No promissory notes to friends or family members are shown. Coury admitted that a promissory note to a friend dated September 1, 1977 was actually written in 1983 or 1984.

Checks written to Coury on a regular basis were listed in the company's books as expenses without any supporting documents to show that the money was actually spent on the park. Costs for construction of Coury's home in the amount of $110,000 were paid from the company's account. In addition, Healey presented evidence on the number of spaces in the park, the number of spaces rented annually and the rental charges for spaces. There was also evidence as to the amount of gross park receipts and the amounts paid on the park mortgage.

Considering the evidence presented, we find sufficient support for the amount of the damages found by the jury.

## INSTRUCTION ON BURDEN OF PROOF

■ The court instructed the jury that Healey had the burden of proving "the existence of the contract, its breach and the resulting damage." The court then gave the following instruction:

> Generally, a party must establish a fact which is essential to his claim or defense; however, the burden of proof as to a matter which is peculiarly within the knowledge or control of the opposite party is placed on that party.

Coury Construction contends the court erred in shifting the burden of proof as it did, arguing there was no evidence it had sufficient control of any evidence so as to justify the instruction.

Coury Construction's accountant for 1983 through 1985 testified that the company did not maintain separate books on the park. He testified that he was able to allocate income amounts to the various corporate entities with the exception of interest income and expenses. Because there were various investments on the books, the accountant testified that a substantial amount of work would be required to attribute those investments and their interest income to the proper entities. He stated a minimum of 40 hours' work would be required to determine those allocations. He

also agreed that the information was buried somewhere in the company's books.

The Ninth Circuit, in a case commenced in Arizona, stated as follows:

> Generally a party must establish a fact which is essential to his claim or defense; but as Professor Wigmore points out, 'still another consideration has been advanced for solving a limited number of cases, i.e.[,] the burden of proving a fact is said to be put on the *party who presumably has peculiar means of knowledge* enabling him to prove its falsity if it is false.'

*G.E.J. Corp. v. Uranium Aire, Inc.,* 311 F.2d 749, 751 (9th Cir.1962), quoting 9 J. Wigmore, Evidence § 2486, at 275 (3d ed. 1940) (emphasis in original).

The evidence here was that the information about the park's operating expenses, income and profits was peculiarly within Coury Construction's control. Under the exceptional circumstances of this case, we find no abuse of discretion in the court's decision to give the jury instruction.

## IS THE JUDGMENT ACCOUNTING ORDER VALID?

■ Coury Construction contends that the court's judgment impermissibly exceeded the jury's verdict because Healey never requested an accounting, citing *Thomas v. Leftault,* 79 Ariz. 290, 288 P.2d 779 (1955). It also contends the court's judgment deprived it of its constitutional right to a jury trial on the issue of future damages, citing Ariz.Const., art. 2, § 23 and *Mozes v. Daru,* 4 Ariz.App. 385, 420 P.2d 957 (1966). We agree that the order for annual accountings in the judgment was erroneous, in part because Healey never sought an accounting and in part because of our determination of Healey's cross-appeal issue on future damages.

## CROSS–APPEAL

On cross-appeal, Healey contends the court erred 1) in limiting his claim for damages to those incurred as of May 1984, 2) in dismissing his RICO claim, 3) in dismissing the case against Pete and Karen Coury individually, 4) in denying him prejudgment interest, and 5) in denying him attorney's fees related to the RICO claim.

## FUTURE DAMAGES

■ The court granted Coury Construction's motion for a directed verdict and limited Healey's claim for damages to May 1984, the date of the breach. Healey argues that he was entitled to submit a claim to the jury for his total damages arising from the company's refusal to honor the contract. Healey contends that refusal constituted an anticipatory repudiation of the contract, entitling him to recover his damages in full at the time of trial. We agree.

As Healey correctly notes, in May 1984 when Coury refused to pay him and denied that a contract existed, Healey had fully performed his obligations. The contract had thus become a unilateral one, and Coury Construction was then obligated to make annual payments to Healey of 10% of the park's profits and to pay him 10% of the increase in value if the park was sold.

The trial court ruled that Healey was entitled to seek damages only through May 1984, based in part on a belief that Healey's complaint sought damages only to that date and in part on its determination that Healey was not entitled to damages for the profits from the sale of the park, there being no breach of that part of the contract because the park had not been sold. We find no indication in the complaint that Healey sought damages only through May 1984. The prayer for relief contains no such limiting language.

We also disagree with the trial court's conclusion that there had not yet been a breach of the contract provision regarding sale of the RV park. When Coury Construction denied there had ever been a contract, it repudiated the contract.

It is well established that in order to constitute an anticipatory breach of contract there must be a positive and unequivocal manifestation on the part of the party allegedly repudiating that he will not render the promised performance

when the time fixed for it in the contract arrives.

*Diamos v. Hirsch*, 91 Ariz. 304, 307, 372 P.2d 76, 78 (1962). Not only did Coury Construction refuse to make even a single payment under the contract, it still maintains there was no contract. That anticipatory repudiation entitled Healey to seek all damages to which he was entitled once he established that the parties had entered into a contract.

Coury Construction contends that Healey is not entitled to recover future damages because of Restatement (Second) of Contracts § 243(3) (1979) which provides:

> Where at the time of the breach the *only remaining duties of performance are* those of the party in breach and are for the payment of money in installments not related to one another, his breach by non-performance as to less than the whole, whether or not accompanied or followed by a repudiation, does not give rise to a claim for damages for total breach. ·

Coury Construction has not cited any Arizona cases that follow that rule, and we have found none other than ones in which the concept was stated as dicta. In contract cases in which both parties have duties to perform at the time of an anticipatory repudiation, the plaintiff may recover future damages. See *Kleeb v. Burns*, 5 Ariz.App. 566, 429 P.2d 453 (1967). We agree with Professor Corbin's observation that it makes no sense to impose a different rule in cases in which the contract has been rendered unilateral because the plaintiff has fully performed at the time of the repudiation. 4 Corbin on Contracts § 962 (1951).

In a unilateral contract case, the Oregon Court of Appeals held that "when there has been a repudiation of a contract, the breach gives rise to only one cause of action." *Wilson v. Western Alliance Corp.*, 78 Or.App. 197, 201, 715 P.2d 1344, 1346 (1986). That decision was based, in part, on the public policy that the state should encourage the disposition of all claims between parties in one proceeding. The same public policy applies in Arizona. See *Staff-*

*co, Inc. v. Maricopa Trading Co.*, 122 Ariz. 353, 595 P.2d 31 (1979).

We conclude that the trial court erred in prohibiting Healey from seeking an award of his total damages at the time the case was submitted to the jury. We remand to permit Healey to seek damages occurring after May 4, 1984, if any.

## RICO CLAIM

■ The court directed a verdict against Healey on the allegations under his RICO claim that Coury Construction had obtained his services through theft, misrepresentation or fraudulent scheme and artifice. The court ruled that RICO cannot be applied retroactively to the date of the contract and that Healey had failed to show any predicate criminal offense to establish his RICO claim.

The racketeering act became effective October 1, 1978, and the contract was entered into in December 1976 or January 1977. A.R.S. § 1–244 provides: "No statute is retroactive unless expressly declared therein." Healey argues that RICO applies because the contract was breached after the statute's effective date and because the acts constituting the breach were RICO predicate offenses. The alleged offense, however, is that Coury Construction entered into the contract with no intention of performing it. That act occurred at the time the contract was made. Therefore, the date of the breach is immaterial.

■ Healey alternatively contends that the remedial language in A.R.S. § 13–2314(N) permits RICO to be applied retroactively. We disagree. Our courts have consistently held to the contrary. *State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 667 P.2d 1304 (1983) ("incorporation of other remedies" language in statute does not permit it to be applied retrospectively); *Haines v. Police Pension Board*, 152 Ariz. 546, 733 P.2d 1129 (App.1986) (statute must expressly state that it applies retroactively); *Stuart v. Insurance Co. of North America*, 152 Ariz. 78, 730 P.2d 255 (App. 1986) (statute not applied retroactively even though remedial and to be liberally

construed). Arizona law is clear that a statute that imposes increased damages is not remedial and can only be applied prospectively. *Allen v. Fisher,* 118 Ariz. 95, 574 P.2d 1314 (App.1977); *Merchants Despatch Transportation Corp. v. Arizona State Tax Commission,* 20 Ariz.App. 276, 512 P.2d 39 (1973).

Healey also argues that sufficient evidence of a predicate offense under RICO was presented to require submission of the claim to the jury. In light of our determination that the statute is not retroactive, we do not address that argument.

## DISMISSAL OF COURYS AS INDIVIDUALS

After ruling that RICO did not apply, the court granted a directed verdict dismissing the suit against Pete and Karen Coury individually. Healey contends the ruling was erroneous because the acts of the Courys constituted crimes. In view of our affirmance of the dismissal of the RICO claim, we find no error.

## PREJUDGMENT INTEREST

Healey complains about the trial court's refusal to award him prejudgment interest on the verdict of $61,200. "A claim is liquidated when it is subject to mathematical computation without reliance upon opinion or discretion." *Aries v. Palmer Johnson, Inc.,* 153 Ariz. 250, 261, 735 P.2d 1373, 1384 (App.1987). This case involved many difficult issues incapable of being determined by mathematical computation. Because there was no liquidated claim, the court was correct in disallowing prejudgment interest.

## ATTORNEY'S FEES ON RICO CLAIM

Having found no merit to Healey's RICO claim, we find the court properly allowed Coury Construction an offset for its attorney's fees incurred in defending the RICO claim.

Attorney's fees and costs are to be borne by each party on appeal. The balance of the judgment is affirmed, and the case is remanded for further proceedings on the issue of future damages. That portion of the judgment ordering annual accountings for park profits and an accounting upon sale of the park is vacated.

ROLL, P.J., and LACAGNINA, C.J., concur.