**WESTERN CHANCE # 2, INC.,**
an Arizona corporation,
Plaintiff–Appellant,

v.

**KFC CORPORATION, a Delaware corporation; KFC National Management Company, a Delaware corporation, Defendants–Appellees.** (Two Cases)

**WESTERN CHANCE # 2, INC.,**
an Arizona corporation,
Plaintiff–Appellee,

v.

**KFC CORPORATION, a Delaware corporation; KFC National Management Company, a Delaware corporation, Defendants–Appellants.** (Two Cases)

Nos. 90–15032, 90–15242,
90–15795, 90–15796.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1991.

Decided Feb. 28, 1992.

George R. Brown and Robert J. Egielski, Linden, Chapa & Fields, Tucson, Ariz., for appellant-cross-appellee.

William S. Hawgood II and Craig H. Kaufman, Streich, Lang, Weeks & Cardon, Tucson, Ariz., for appellees-cross-appellants.

Sheryl G. Snyder, Merrill S. Schell and Walter M. Jones, Wyatt, Tarrant & Combs, Louisville, Ky., for amicus curiae.

Before POOLE, REINHARDT and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Western Chance #2, Inc. (Western Chance) appeals the district court's grant of summary judgment[1] in favor of KFC Corporation and KFC National Management Co. (both hereinafter referred to as KFC) on Western Chance's complaint alleging breach of an oral contract which allegedly gave Western Chance an exclusive franchise for the whole city of Tucson, Arizona. Western Chance also appeals the district court's determinations regarding written contracts with KFC. KFC cross appeals the district court's denial of attorneys' fees. We affirm in part and reverse and remand in part.

## BACKGROUND

Western Chance is a franchisee of KFC in Tucson, Arizona. It and its sister corporations of the same name own and operate Kentucky Fried Chicken outlets in the city and other areas of southern Arizona. In 1965, Walter Hill (Hill), founder and shareholder of Western Chance, met with Dick Robinson (Robinson), a franchising director at KFC in Kentucky. The purpose of the meeting was to discuss the possible development of KFC outlets by Western Chance. The parties decided that Western Chance would build and operate outlets in Tucson. Western Chance alleges that at this meeting Robinson granted Western Chance exclusive territorial rights for Tucson. Western Chance further alleges that the exclusive territorial agreement consummated with Robinson required Western Chance to open six KFC outlets within a specified time and to continue to open outlets as the population of Tucson grew. Western Chance contends that this oral agreement accorded with the "area-wide" franchises KFC was offering at the time. KFC argues that this alleged agreement never occurred.[2]

---

1. *Western Chance #2, Inc. v. KFC Corp.,* 734 F.Supp. 1529 (D.Ariz.1990) (*Western Chance I*).

2. KFC argues that the existence of the oral agreement is not a material disputed fact because even if an oral agreement was reached, it is unenforceable as a matter of law.

In 1966, Hill moved to Tucson and Western Chance began to build and open the agreed-upon KFC outlets. KFC required Western Chance to enter into a separate franchise agreement for each outlet. One term of the standardized form agreement gave each outlet an exclusive territory within a radius of 1½ miles of the store or within an area containing 30,000 people, whichever was smaller. A subsequent class action settlement between KFC and its franchisees amended the Franchise Agreements to give existing franchisees the right of first application for ownership of contemplated new KFC outlets to be located near the franchisees' existing outlets. (G & K Amendment, Section V). Later franchise agreements incorporated the substance of Section V of the G & K Amendment into their terms. (Franchise Agreements ¶ 19). The parties debate the scope of the Paragraph 19. Western Chance argues that it applies to all contemplated stores, whether they be franchised to a third party or owned by KFC. KFC contends that the right of first application is for ownership of contemplated franchised outlets, not contemplated company-owned stores.

In 1974, Western Chance purchased options for eight more KFC-outlets in Tucson and southern Arizona. Western Chance exercised a number of the options and developed additional stores. In 1987, one outlet was closed by local health officials for sanitation violations. KFC sued for breach of the franchise agreement covering that outlet. The parties settled, and Western Chance agreed to remedy the sanitation problems and upgrade all of its outlets. It also agreed to surrender an option for a store at Ina and Thornydale roads to KFC. The settlement agreement, dated July 6, 1987, provided that Western Chance released KFC of all obligations and claims

arising out of the litigation or from its commercial relationship with KFC (the General Release). KFC contends that the General Release eliminated any obligations it may have had under an oral agreement.

Finally, KFC opened a company-owned store in Tucson and commenced construction on another. Neither is located within the 1½ mile exclusive territory of a Western Chance-owned outlet. Western Chance claimed that the oral agreement granted it the exclusive franchise for the entire city. Thus, it filed this action for, among other things, breach of that agreement.

The facts are more extensively set forth in the district court's opinion and need not be repeated here. *Western Chance I*, 734 F.Supp. at 1530–36.

### JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1332 and § 1446.[3] We have jurisdiction pursuant to 28 U.S.C. 1291.

We review de novo the district court's grant of summary judgment. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989). Summary judgment is proper if there are no questions of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

---

3. Western Chance claims that the district court lacked subject matter jurisdiction because KFC did not attach a copy of Western Chance's motion for a preliminary injunction when it removed the case from the state Superior Court. Just how that failure could deprive the court of jurisdiction is not clear to us. To the extent that the failure to attach that document was an error, it was one that the district court could

allow KFC to cure, as it did. *See* 28 U.S.C. § 1446; *Barrow Dev. Co. v. Fulton Ins. Co.*, 418 F.2d 316, 317–18 (9th Cir.1969); *Covington v. Indemnity Ins. Co.*, 251 F.2d 930, 933 (5th Cir.), *cert. denied*, 357 U.S. 921, 78 S.Ct. 1362, 2 L.Ed.2d 1365 (1958); *National Audubon Soc'y v. Department of Water & Power*, 496 F.Supp. 499, 503 (E.D.Cal.1980).

## DISCUSSION

The district court granted KFC's motion for summary judgment as to all eight counts in Western Chance's complaint. Western Chance has appealed the judgment as to all counts but one, tortious breach of the implied covenant of good faith and fair dealing.

### A. Breach of Oral Contract (Count One) and Promissory Estoppel (Count Seven).

■ Although its existence and terms are disputed by the parties, the court assumed that an oral agreement for exclusive rights to develop Tucson had been reached by Hill and Robinson. However, the court found that the agreement violated the statute of frauds, and thus was unenforceable as a matter of law. Moreover, it determined that the parol evidence rule barred proof of the agreement, and that the General Release abrogated the oral agreement, if it ever existed.

Western Chance disputes these rulings. It contends that either the agreement is not within the purview of the statute of frauds, or, in the alternative, it is evidenced by sufficient memoranda and the parties' course of performance under the agreement estops KFC from raising the statute as a defense.

#### 1. *Statute of Frauds.*

■ Under Arizona law, contracts which are not to be performed within one year from the making of the contract must be in writing. Ariz.Rev.Stat. § 44–101. The one-year provision of the statute of frauds is narrowly construed. John D. Calamari & Joseph M. Perillo, *Contracts* § 19–17 (3d Ed.1987). The mere possibility that performance can be completed within one year—even if not contemplated by the parties—is usually sufficient to remove the agreement from the statute of frauds. *Co-op Dairy, Inc. v. Dean,* 102 Ariz. 573, 575, 435 P.2d 470, 472 (1967); *Waugh v. Lennard,* 69 Ariz. 214, 226, 211 P.2d 806, 813–14 (1949) (since employer could die within a year, oral employment contract not within the statute of frauds); *Healey v. Coury,* 162 Ariz. 349, 353, 783 P.2d 795, 799 (App. 1989) (statute requires impossibility of performance within a year). The fact that performance is completed in more than a year is immaterial. *Healey v. Coury,* 162 Ariz. at 353, 783 P.2d at 799.[4] In this case, Western Chance argues that KFC's performance under the oral agreement was complete when Robinson granted the six options. Moreover, since it is possible that Western Chance could have opened all six outlets within a year of the making of the contract, the oral agreement did not fall under the statute of frauds. However, the district court correctly found that KFC's performance under the contract was not complete when it granted the options, since KFC had a continuing obligation to reserve the Tucson market exclusively for Western Chance.

The parties dispute the duration of KFC's continuing obligation. Western Chance argues that it was indefinite. The testimony of Hill supports this inference; KFC was required to maintain Western Chance's exclusivity until Western Chance was unable to satisfy market demand for KFC outlets and Western Chance turned down proposed outlets. Yet Robinson testified that he agreed to a twenty year exclusivity term. If so, the oral agreement would have expired in 1985. However, he also said that KFC would honor the oral agreement as long as Western Chance "fulfilled its obligations"; he did not specifically say that the contract would end upon Western Chance's refusal to build additional outlets.

---

4. Although the prevailing view under Ariz.Rev. Stat. § 44–101 is to remove an oral contract from the purview of the statute of frauds if there is any possibility of full performance within a year, a minority view has developed that allows exception from the rule only when there is a reasonable possibility that the contract could be performed within a year. *See, e.g., Apache Trailer Sales, Inc. v. Redman Indus.,* 117 Ariz. 504, 505–06, 573 P.2d 904, 905–06 (App. 1977). Regardless of the merits of the minority view, we are bound by the Arizona Supreme Court's construction and application of section 44–101. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Reding v. Texaco, Inc.,* 598 F.2d 513, 519 (9th Cir.1979). That court has yet to adopt the minority view.

We are unable to say whether KFC's obligations were to terminate under the oral agreement once Western Chance turned down proposed outlets or whether KFC was still required to give Western Chance the right of first application to the next proposed outlet, despite having turned down others. The crux of the issue is not the duration of the contract, but whether it was to be terminated once Western Chance declined proposed outlets. If the grant of exclusivity could be terminated by Western Chance's refusal, the term was indefinite and the agreement did not violate the statute of frauds. There was a possibility, however small, that the uncertain future event—Western Chance turning down proposed outlets—could have occurred within one year of the making of the contract. *See Warner v. Texas & Pac. Ry. Co.*, 164 U.S. 418, 434–35, 17 S.Ct. 147, 153–54, 41 L.Ed. 495 (1896) (railyard's oral agreement to maintain rail switch for as long as plaintiff used the railroad did not violate the statute of frauds since there remained the possibility at the making of the contract that plaintiff's need for the railway would end before one year); *Joe Regueira, Inc. v. American Distilling Co.*, 642 F.2d 826, 829–30 (5th Cir.1981) (beverage distributor's oral exclusivity agreement of indefinite duration not within the statute of frauds). However, if the term was twenty years or perpetual, regardless of Western Chance's refusal, then there would be no possibility of full performance within a year and the agreement would fall within the statute of frauds. In any event, this term of the oral agreement is a disputed material fact, and the district court erred by granting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

## 2. *Memorandum of Agreement.*

 Western Chance also contends that the oral agreement is evidenced by sufficient memoranda. Specifically, it argues that two letters sent by Robinson's office attest to KFC's grant of exclusivity. To satisfy the statute of frauds, a memorandum must state with reasonable certainty the identity of the parties, the subject matter of the agreement, and the essential terms. John D. Calamari & Joseph M. Perillo, *Contracts* § 19–29 (3d Ed.1987). It also must be signed by the party to be charged. *Id.* at § 19–31. The parties need not intend the writing to be the full and final expression of their agreement; an informal letter setting forth the required information can suffice. *Custis v. Valley Nat'l Bank*, 92 Ariz. 202, 205–06, 375 P.2d 558, 561 (1962). Unless the memorandum is intended to be the complete expression of the parties' agreement, parol evidence may be admitted to explain its terms. *Crone v. Amado*, 69 Ariz. 389, 397, 214 P.2d 518, 523 (1950). However, parol evidence cannot be used to cure a deficient memorandum. *Custis v. Valley Nat'l Bank*, 92 Ariz. at 206, 375 P.2d at 561.

The letters from Robinson's office do not state the central term of the alleged oral agreement; they do not intimate that Western Chance's presence in Tucson would be exclusive. The letters did speak of Western Chance's options "for the City of Tucson," and expressed KFC's interest in "working with [Western Chance] regarding the city of Tucson." At no point do the letters refer to an exclusive territory. Moreover, one letter states that Western Chance's "option is tentative until all paper work is cleared and we can submit your application to our Executive Committee for final approval." The district court properly found as a matter of law that the extrinsic evidence submitted by Western Chance could not cure this fatal deficiency. *See Custis v. Valley Nat'l Bank*, 92 Ariz. at 206, 375 P.2d at 561.

## 3. *Part Performance and Estoppel.*

Western Chance next claims that the doctrines of part performance and estoppel would allow enforcement of the oral agreement even if it were otherwise within the statute of frauds. We agree with the district court that these claims have no merit and we adopt its opinion in that regard. *Western Chance I*, 734 F.Supp. at 1537–38.

## 4. *Parol Evidence—Irreconcilable Terms.*

 Western Chance also disputes the court's ruling that the terms of the individ-

ual franchise agreements and the terms of the oral agreement are "irreconcilable." Amicus Curiae, the Association of Kentucky Fried Chicken Franchisees (AKFCF), joins this argument. The district court found that the franchise agreements were fully integrated contracts providing for an exclusive territory for each outlet of 1½ miles or 30,000 people, whichever came first. A prior oral agreement granting an exclusive right to the entire city, it found, would contradict that language in the franchise agreements. Thus, the court held, parol evidence of the oral agreement was inadmissible to alter the terms of the written, integrated franchise agreements. *See Spudnuts, Inc. v. Lane,* 131 Ariz. 424, 426–27, 641 P.2d 912, 914–15 (App.1982). AKFCF argues that KFC requires all franchisees to sign franchise agreements with this term for each outlet, even if the franchisee has entered into a "master franchise agreement." [5] Apparently, neither KFC nor any franchisee considers these two agreements to be "irreconcilable."

Although the court did not consider the relationship between KFC's written agreements, it erred in holding that an oral exclusivity agreement and the outlet franchise agreements were inherently irreconcilable. The subject matter of the outlet agreements concerned only the parties' obligations vis-a-vis that outlet. It is KFC's promise that it will propose no outlets within that range to anyone, including the existing franchisee. An oral agreement for exclusive rights to an entire city concerns a different matter. It is KFC's promise that proposed outlets will not be owned by or franchised to anyone but the existing franchisee.

Therefore, this ruling of the district court was in error.

### 5. *The General Release.*

█ Finally, Western Chance contends that the district court erroneously decided that the General Release entered into as a result of the litigation between KFC and Western Chance over the closure of one of

Western Chance's outlets extinguished the oral agreement as a matter of law. We agree.

The General Release purported to release KFC from "any and all claims, demands, causes or action, and liabilities of every kind and nature, known and unknown, suspected and unsuspected, held by Western Chance and relating to the subject matter of the litigation or any other matter involving his franchise and commercial relationship with KFC...." The Release was signed by the parties in July of 1987. The district court found that Western Chance was aware that its exclusive territorial agreement was contradicted by the individual franchise agreements at the time it entered into that release. Thus, the court reasoned, Western Chance released its claim under an exclusive agreement when it signed the General Release.

However, the terms of the General Release seem to limit its application to claims held by Western Chance at the time the General Release was executed. It did not, and probably could not, operate to extinguish future claims. *See Yellowstone Pipe Line Co. v. Kuczynski,* 283 F.2d 415, 420–21 (9th Cir.1960) (California law); *Haco Drilling Co. v. Hammer,* 426 P.2d 689, 694–95 (Okla.1967) (Oklahoma law). Since the terms of the oral agreement and those of the individual franchise agreements are not inherently irreconcilable, Western Chance did not necessarily release existing, and then undisputed, rights under the oral agreement when it signed the General Release. Moreover, Western Chance maintains it first learned of KFC's plans to open company-owned stores in Tucson in December of 1987. If so, at the time the General Release was signed, Western Chance's claims of breach of the oral agreement had not matured, and the release would not act as a bar to unknown prospective claims.

In any event, the intended scope of the General Release and its effect, if any, upon KFC's and Western Chance's obligations under the oral agreement are material disputed facts. The district court erred in

---

5. This is the designation that KFC gives to its written agreements which confer the right to be the exclusive franchisee for a given territory, such as a whole city.

ruling that the General Release extinguished Western Chance's claims under the oral agreement as a matter of law.

B. *Breach of Written Contract (Count Two), Breach of the Covenant of Good Faith and Fair Dealing (Count Three), Fraud (Count Five), Fraudulent Inducement (Count Six), and Unconscionability (Count Eight).*

Western Chance also appeals from the district court's summary judgment regarding its other claims against KFC. We have reviewed the record and we are satisfied that the district court properly granted summary judgment on those claims. We therefore affirm the judgment on counts 2, 3, 5, 6 and 8 for the reasons given by the district court. *Western Chance I,* 734 F.Supp. at 1539–42.

C. *Other Issues.*

■ The subsidiary issues raised by Western Chance can be resolved rather quickly. Its claim that the district court erred in refusing to accept its late filed affidavits has little merit. The district court has discretion to refuse the filing of untimely affidavits. *See* Fed.R.Civ.P. 56(e). These were filed long after the date prescribed by Ariz.Dist.Ct.R. 11. On the record before us we are unable to say that the district court abused its discretion in refusing to accept those affidavits. Moreover, if the district court overlooked Western Chance's request for a preliminary injunction, that issue can be brought before it on remand.

Finally, KFC's appeal from the denial of its request for attorneys' fees has become moot for now and can be readdressed to the district court at the conclusion of this litigation.

### CONCLUSION

It appears that a franchise relationship that ran smoothly for many years has now become bitter and adversary. The unfortunate result has been this and other litigation between the parties. The district court's attempt to resolve the whole of this case turns out to have been too hasty.

Thus, we must reverse that court's determination that the statute of frauds, the parol evidence rule, and The General Release bar Western Chance's assertion of rights under an oral agreement for an exclusive territory covering the City of Tucson. Of course, in doing so we express no opinion on the proper outcome of the litigation. We only hold that disputed issues of fact preclude its resolution at this time.

AFFIRMED in part; REVERSED in part and REMANDED. The parties shall bear their own costs on appeal.