290 P.3d 1218

**Helen RUDINSKY, Plaintiff/Appellant,**

**v.**

**Ryan HARRIS; Adam Sachs and Green Light Real Estate, LLC, a Nevada limited liability company, Defendants/Appellees.**

No. 1 CA–CV 11–0663.

Court of Appeals of Arizona, Division 1, Department T.

Nov. 23, 2012.

The Nathanson Law Firm By Philip J. Nathanson, Scottsdale, Attorneys for Plaintiff/Appellant.

Hill & Hill, PLC By R. Corey Hill, Ginette M. Hill, Phoenix, and DeCiancio Robbins, PLC By Christopher Robbins, Tempe, Attorneys for Defendants/Appellees.

## OPINION

GEMMILL, Judge.

¶ 1 Helen Rudinsky appeals the trial court's partial summary judgment in favor of defendants Ryan Harris, Adam Sachs, and Green Light Real Estate LLC, dismissing Rudinsky's claim for breach of an oral contract. Because we agree with the trial court that the statute of frauds bars her contract claim, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In reviewing a grant of summary judgment, we view the facts and reasonable inferences from the facts in a light most favorable to the party against whom judgment was entered. *Maycock v. Asilomar Dev., Inc.*, 207 Ariz. 495, 496, ¶ 2, 88 P.3d 565, 566 (App.2004).

¶ 3 In 2004, defendants Ryan Harris and Adam Sachs formed Green Light Real Estate LLC (collectively "Green Light") as a full service brokerage company. In 2006, Green Light organized a referral program known as the "Investor Ring." The Investor Ring consisted of real estate agents who earned referral fees by bringing prospective buyers to Green Light's real estate developers. Agents were paid commissions when their buyers closed on property deals with Green Light's developers. The commissions were split 50/50, half going to the agent who brought in the buyer and the other half to Green Light.

¶ 4 Rudinsky was an agent in the Investor Ring and sold real estate investment properties in conjunction with Green Light. From June to December 2006, Rudinsky sold $6,823,945 worth of real estate with Green Light. Rudinsky and Green Light entered into separate referral fee agreements for each of the referrals made by Rudinsky to Green Light's developers. No additional written contracts were created between Rudinsky and Green Light.

¶ 5 Rudinsky claims that, separate from the individual referral agreements, the parties had an oral, implied-in-fact contract concerning their real estate deals. Rudinsky testified that Green Light promised not to go around her to work directly with her buyers and, in exchange, she promised not to cut Green Light out of any transactions between her buyers and Green Light's developers. According to Rudinsky, once she brought a buyer to Green Light, Green Light would never be entitled to deal with that buyer without compensating her. She explained:

Q: And according to your understanding of the implied agreement Green Light would not be entitled to deal directly with those buyers forever basically?

A: Yes.

Q: So if a buyer belonged to you or you brought the buyer in, from that day forward Green Light would never be able to sell property to that person directly; is that correct?

A: Yes.

Q: Without you being involved?

A: Cutting me out.

Q: So that contract could have lasted five years, 10 years, 20 years, however long that buyer was interested in buying property?

A: Yeah. I mean, it was—yeah.

Rudinsky also testified that she declined, in accordance with the agreement, to cut Green Light out of her business with a particular developer.

¶ 6 Rudinsky further testified that the agreement would apply to her buyers even after she left Green Light. She testified she would earn commissions on deals involving the initial buyers she brought to Green Light ("first generation" buyers) and also on deals with "second generation" buyers referred to Green Light through the first generation buyers:

Q: In other words, if you could track through the buyers who brought in buyers who brought in buyers, if you could track

through that network, under your understanding of the agreement with Green Light you would have been entitled to commissions down the line?

A: Yes.

Q: And if this had continued on for five years, 10 years, 20 years, whatever it was, you would have continued to have that entitlement in your mind?

A: That was the thinking. And Ryan [Harris] thought that way too.

¶ 7 In early 2007, Rudinsky left the Green Light Investor Ring. Before she left, the parties considered—but did not enter into—a "Confidentiality and Non Compete Agreement." Green Light thereafter had contact with one of Rudinsky's previous buyers, and she alleges that such contact constituted a breach of the parties' oral contract.

¶ 8 On November 1, 2007, Harris sent an email to the Investor Ring concerning Rudinsky's exit from the organization. The email alleged that Rudinsky was an "imposter," who had been "kicked out of the organization" for asking developers to cut Green Light out of deals. Rudinsky alleges that this email defamed her.

¶ 9 In July 2008, Rudinsky filed a complaint in superior court alleging breach of an implied-in-fact contract and defamation *per se*. In September 2010, Green Light filed a motion for partial summary judgment challenging Rudinsky's breach of contract claim on the basis of the statute of frauds. Rudinsky failed to respond to the motion for summary judgment. The trial court granted partial summary judgment after considering Green Light's motion, "the absence of a response," and the record as a whole. In November 2010, Green Light filed a motion for attorneys' fees incurred in defense of the breach of contract claim. In response to Green Light's application for attorneys' fees, Rudinsky requested an evidentiary hearing regarding financial hardship. The trial court initially scheduled, but subsequently cancelled, the evidentiary hearing; and the court awarded attorneys' fees to Green Light in the amount of $27,197.

¶ 10 In August 2011, the trial court entered a judgment in Green Light's favor on Rudinsky's breach of contract claim, including the award of attorneys' fees. The judgment included a determination in accordance with Arizona Rule of Civil Procedure 54(b) that there was no just reason for delay and directed the entry of judgment. Rudinsky timely appeals to this court. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12–2101(A)(1) (Supp. 2012).

## ANALYSIS

¶ 11 On appeal Rudinsky argues the trial court erred in granting partial summary judgment to Green Light on the contract claim and in granting attorneys' fees to Green Light.

### Application of the Statute of Frauds To the Alleged Oral Contract

¶ 12 Rudinsky claims Green Light violated the oral agreement by failing to compensate her after contracting directly with one of her buyers. Rudinsky also alleges Green Light violated the agreement by failing to compensate her for purchases made by second-generation buyers. Green Light argues that the alleged contract is unenforceable under the statute of frauds because it was not in writing and could not be performed within one year. We agree that Green Light was entitled to summary judgment on the breach of oral contract claim.

¶ 13 We review the granting of "summary judgment de novo to determine whether a genuine issue of material fact exists and whether the trial court correctly applied the law." *Mein ex rel. Mein v. Cook*, 219 Ariz. 96, 98, ¶ 9, 193 P.3d 790, 792 (App.2008) (citation omitted). Summary judgment should be granted when the record shows that there is no real dispute as to any material fact and the defendants are entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c); *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 142, 639 P.2d 330, 332 (1982).

¶ 14 Rudinsky initially argues the factual record presented by Green Light failed to establish a prima facie case for summary judgment and the trial court erred in granting judgment in favor of Green Light, even in the absence of a response from her. Rudin-

sky is correct that the trial court must deny a summary judgment motion if the moving party has not demonstrated entitlement to judgment as a matter of law. *Rand v. Porsche Fin. Servs.*, 216 Ariz. 424, 430, ¶ 20, 167 P.3d 111, 117 (App.2007) ("Absent a showing that the moving party is entitled to summary judgment, the party opposing the motion need not even respond, and the failure to respond cannot in itself entitle the moving party to summary judgment."); *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 196, 805 P.2d 1012, 1017 (App.1990). A party who fails to respond to a motion for summary judgment, however, "does so at his peril because uncontroverted evidence favorable to the movant, and from which only one inference can be drawn, will be presumed to be true." *Tilley v. Delci*, 220 Ariz. 233, 237, ¶ 11, 204 P.3d 1082, 1086 (App.2009) (citation omitted).

¶ 15 Green Light's statement of facts in support of its motion for summary judgment presented each party's initial disclosure statements and excerpts from Rudinsky's deposition testimony. Because Rudinsky failed to respond to the motion, she is limited to arguing the legal sufficiency of the facts presented by Green Light and reasonable inferences drawn therefrom.

¶ 16 Green Light's motion for partial summary judgment was based on the following portion of Arizona's statute of frauds:

> No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:
>
> . . . .
>
> (5) Upon an agreement which is not to be performed within one year from the making thereof.

A.R.S. § 44–101(5) (2003).

¶ 17 To determine whether an agreement comes within this section, the proper inquiry is whether the contract is capable of being performed within one year of the agreement. This section has been interpreted as not applying to oral contracts when there is a possibility of performance within one year. *Waugh v. Lennard*, 69 Ariz. 214, 226, 211 P.2d 806, 813–14 (1949); *Edward Greenband Enters., of Ariz. v. Pepper*, 112 Ariz. 115, 118, 538 P.2d 389, 392 (1975). When it is clear from the duration of the contract, however, that performance will not be completed within a year, the statute of frauds applies. *See Mullins v. S. Pac. Transp. Co.*, 174 Ariz. 540, 542, 851 P.2d 839, 841 (App.1992) (barring an oral contract of employment until employee is 65 years old because it could not be performed within one year); *cf. Apache Trailer Sales, Inc. v. Redman Indus., Inc.*, 117 Ariz. 504, 505–06, 573 P.2d 904, 905–06 (App.1977) ("When a reasonable time for performance is an implied term of a contract, and from the facts a reasonable time is more than one year, the contract is within the statute of frauds.").

¶ 18 As more directly applicable here, a bilateral oral contract is barred by the statute of frauds when it is clear that either side of the contract cannot fully perform within one year. *See Winburn v. All Am. Sportswear Co.*, 215 Cal.App.2d 380, 30 Cal.Rptr. 321, 322 (Cal.Dist.Ct.App.1963). An oral contract creating a permanent arrangement in which the defendant's liability necessarily extends beyond a one-year period, without any term that may end the contractual relationship, is not capable of being performed within one year and falls within the statute of frauds. *See Western Chance No. 2, Inc. v. KFC Corp.*, 957 F.2d 1538, 1542 (9th Cir.1992) (applying Arizona law); 72 Am.Jur.2d *Statute of Frauds* § 13 (2012). This principle applies to the oral contract alleged by Rudinsky.

¶ 19 In *Western Chance,* the Ninth Circuit considered an oral agreement in which Western Chance, a franchisee, agreed to open six KFC stores in the Tucson area and to continue to open stores as the Tucson population increased, in return for exclusive control of the Tucson KFC market. 957 F.2d at 1539. Western Chance sued KFC when KFC opened a company-owned store in Tucson in violation of the exclusivity agreement. *Id.* at 1540. Western Chance argued the statute of frauds did not apply to this oral agreement because it could have opened all six outlets

within a year of making the contract. *Id.* at 1541. The court noted, however, that KFC' performance was not complete when it granted the options, because KFC had a continuing obligation to reserve the Tucson market exclusively for Western Chance. *Id.* The court concluded that if the agreement could not be terminated within a year, "there would be no possibility of full performance within a year and the agreement would fall within the statute of frauds." *Id.* at 1542.[1]

¶ 20 In this case, Rudinsky alleged a permanent contractual relationship with Green Light. Her deposition testimony makes clear she expected, and the parties allegedly intended, that Green Light would be obligated to pay her commissions indefinitely into the future, including any and all commissions that ever arise from her buyers. Rudinsky attempts to avoid the bar of the statute of frauds by arguing that the oral agreement could have been completed within one year because it is possible Rudinsky's work would not result in any subsequent generation of buyers. Rudinsky also suggests it is possible that several generations of transactions could occur within one year, which could have completed the agreement.

¶ 21 These arguments, similar to those rejected in *Western Chance*, ignore the reality that Green Light's purported obligation under the alleged contract was to continue indefinitely. The possibility that none of Rudinsky's buyers would generate any more deals does not alter Green Light's alleged obligation to pay Rudinsky a commission if and when one of them completed a transaction with Green Light and its developers. Although the contract may have little or no value if no deals actually arise from Rudinsky's buyers, Green Light nevertheless remains obligated under the contract as described by Rudinsky.

¶ 22 In *Shirley Polykoff Adver., Inc. v. Houbigant, Inc.*, 43 N.Y.2d 921, 403 N.Y.S.2d 732, 374 N.E.2d 625, 626 (1978), the plaintiff alleged an oral contract in which the defendant agreed to pay $5,000 for "every year" the defendant used an advertisement designed by the plaintiff. The court found the agreement was within New York's statute of frauds because the defendant's "failure to use the advertisement for any period of time" did not terminate his obligation to pay if he did use the advertisement in the future. *Id.* Similarly, the contract here is not completed, nor does it terminate, simply because Rudinsky's buyers do not complete any real estate deals. Green Light's obligation, similar to KFC's promise in *Western Chance* to reserve the Tucson market, is a continuing promise to pay Rudinsky a commission for any deals with her buyers.

¶ 23 Rudinsky's arrangement is distinguishable from other indefinite contracts which are capable of being performed within one year. *See Waugh*, 69 Ariz. at 226, 211 P.2d at 813–14 (holding an oral contract to pay money from promisor's estate is capable of being performed within one year because promisor may die within the year); *Warner v. Tex. & Pac. Ry. Co.*, 164 U.S. 418, 17 S.Ct. 147, 41 L.Ed. 495 (1896) (concluding an oral agreement to maintain a railway as long as plaintiff needed the railway is capable of being performed within one year because plaintiff's need might be satisfied within one year). Here, the alleged contract cannot be satisfied by an event or contingency that may occur within the year because there is no provision in the contract allowing Green Light to terminate the agreement within the year. *See Shirley*, 403 N.Y.S.2d 732, 374 N.E.2d at 626 ("it would appear that there is no way in which defendant could unilaterally terminate the contract"). Nor would Rudinsky's potential death within one year terminate the contractual obligation of Green Light, because the obligation would pass to the benefit of her estate, heirs, or beneficiaries. We conclude that Rudinsky's alleged oral agreement entitling her to commissions for an indefinite period cannot be performed within one year.[2]

---

1. Ultimately, the court in *Western Chance* reversed the grant of summary judgment, however, because there was a disagreement between the parties concerning whether the contract could be terminated within one year. 957 F.2d at 1542.

The evidence submitted with Green Light's motion for summary judgment discloses no such provision or dispute.

2. Several jurisdictions have similarly recognized that oral contracts entitling a person to receive

¶ 24 Rudinsky also contends that even if the agreement could not be performed within one year, it should not be barred by A.R.S. § 44–101(5) because some real estate commission agreements may be enforceable even without an end date. Rudinsky cites *Lancer Realty & Inv., Inc. v. Anderson*, 146 Ariz. 76, 703 P.2d 1225 (App.1985) to support this argument. *Lancer Realty*, however, has no application to this case. In *Lancer Realty*, the court addressed the sufficiency of the terms needed in a *written* agreement under A.R.S. § 44–101(7) concerning a contract authorizing a broker to sell property for a single commission. The issue here concerns the enforceability of an *oral* agreement for commissions on additional sales for the indefinite future.

■ ¶ 25 Rudinsky further argues that the doctrine of part performance applies to exclude the agreement from the statute of frauds. The doctrine of part performance, however, does not apply to Rudinsky's action to recover commissions. The Arizona Supreme Court has squarely held that "the equitable doctrine of part performance is inapplicable in a suit where only *money damages* are sought." *Trollope v. Koerner*, 106 Ariz. 10, 17, 470 P.2d 91, 98 (1970) (citing *Evans v. Mason*, 82 Ariz. 40, 44, 308 P.2d 245, 248 (1957)). Although the doctrine of part performance is available to a party seeking an equitable remedy upon enforcement of an oral agreement, it is not available to a party seeking only a legal remedy such as money damages. *William Henry Brophy Coll. v. Tovar*, 127 Ariz. 191, 195, 619 P.2d 19, 23 (App.1980) (concluding that the "correct rule" is that if "a party attempting to enforce an oral agreement seeks an equitable remedy, such as specific performance, the equitable doctrines of estoppel and part performance are available to him" but if "he seeks only a legal remedy, such as money damages for breach, they are not").

commissions for an indefinite period, even after termination of his or her employment, are barred by the statute of frauds. *See Tobin & Tobin Ins. Agency, Inc. v. Zeskind*, 315 So.2d 518 (Fla.Dist. Ct.App.1975); *Zupan v. Blumberg*, 2 N.Y.2d 547, 161 N.Y.S.2d 428, 141 N.E.2d 819 (1957); *Guterman v. RGA Accessories, Inc.*, 196 A.D.2d 785, 602 N.Y.S.2d 116 (1993); *Daup v. Tower Cellu-

### The Trial Court's Award of Attorneys' Fees

¶ 26 After granting partial summary judgment, the trial court also awarded Green Light attorneys' fees under A.R.S. § 12–341.01(A) (Supp.2012). The trial court may award attorneys' fees to the "successful party" in a "contested action arising out of contract" in order to "mitigate the burden of the expense of litigation to establish a just claim or a just defense." A.R.S. § 12–341.01(A), (B). Rudinsky challenges the award of attorneys' fees on several grounds.

■ ¶ 27 The applicability of A.R.S. § 12–341.01(A) to a particular successful party is a question of statutory interpretation that an appellate court reviews de novo, but a trial court's decision on the amount of fees is reviewed under the abuse of discretion standard. *Zeagler v. Buckley*, 223 Ariz. 37, 38, ¶ 5, 219 P.3d 247, 248 (App.2009). We will not disturb the trial court's discretionary award of fees if there is any reasonable basis for it. *Hale v. Amphitheater Sch. Dist. No. 10 of Pima County*, 192 Ariz. 111, 117, ¶ 20, 961 P.2d 1059, 1065 (App.1998). Even when a contract is alleged by a plaintiff and the defendant successfully proves that there was no contract, the action is considered to have arisen out of contract for purposes of A.R.S. § 12–341.01. *Lacer v. Navajo County*, 141 Ariz. 392, 394, 687 P.2d 400, 402 (App.1984).

■ ¶ 28 Rudinsky alleged a "breach of contract," thereby bringing this claim within the ambit of § 12–341.01(A). Green Light was the "successful party" on the breach of contract claim because the trial court ruled in Green Light's favor and entered a final judgment. Therefore, § 12–341.01(A) applies and affords considerable discretion to the trial court to award attorneys' fees to Green Light.

*lar, Inc.*, 136 Ohio App.3d 555, 737 N.E.2d 128 (2000). Other jurisdictions have reached the opposite conclusion. *See Stein v. Malden Mills, Inc.*, 9 Ill.App.3d 266, 292 N.E.2d 52 (1972); *Home News, Inc. v. Goodman*, 182 Md. 585, 35 A.2d 442 (1944); *Weiper v. W.A. Hill & Assocs.*, 104 Ohio App.3d 250, 661 N.E.2d 796 (1995).

¶ 29 Rudinsky argues the award of attorneys' fees is premature because the entire case had yet to be resolved and the defamation claim was still pending. We disagree. Green Light has been adjudicated the successful party on the contract claim and a final judgment with Rule 54(b) language has been entered.[3]

¶ 30 Rudinsky also contends attorneys' fees should not have been awarded because the contract claim is "interwoven" with the tort claim. But even if the alleged contract claim is interwoven with the defamation claim, this does not prevent an award of fees on the contract claim. The cases cited by Rudinsky support a general principle not applicable here: that a successful party on a contract claim may also recover attorneys' fees incurred on an interwoven tort claim. *See Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.,* 198 Ariz. 10, 13, ¶ 17, 6 P.3d 315, 318 (App.2000); *Bennett v. Baxter Group, Inc.,* 223 Ariz. 414, 419–20, ¶ 21, 224 P.3d 230, 235–36 (App.2010).

¶ 31 Rudinsky further argues that the factors outlined in *Associated Indem. Corp. v. Warner,* 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985), weigh against an award of attorneys' fees. She asserts that her lawsuit was meritorious, Green Light was not successful on all claims, an award of attorneys' fees would cause "extreme hardship" due to her dire financial situation, and an award here would discourage other parties from litigating interwoven tort claims. These arguments are not persuasive.

¶ 32 Green Light successfully defended a contract claim Rudinsky chose to assert. And Rudinsky did not establish her extreme economic hardship. "[T]he party asserting financial hardship has the burden of coming forward with *prima facie* evidence of financial hardship." *Woerth v. City of Flagstaff,* 167 Ariz. 412, 420, 808 P.2d 297, 305 (App.1990). Rudinsky did not present any affidavits in response to Green Light's application for attorneys' fees. Additionally, her failure to respond to Green Light's request for financial information led to the cancellation of the evidentiary hearing the court set to consider her financial hardship. "Unsworn and unproven assertions of counsel in memoranda are not facts admissible in evidence." *Id.* Additionally, the award of attorneys' fees in this case will not discourage legitimate contract claims. We therefore discern no abuse of discretion by the trial court in weighing the *Associated Indemnity* factors and in granting attorneys' fees.

¶ 33 Rudinsky lastly argues that the amount of attorneys' fees awarded was unreasonable. Specifically, she alleges that the number of hours billed was excessive and the entries were not properly separated between the contract and tort claims. Green Light's application for attorneys' fees, however, included detailed time entries and a supporting affidavit as required by *Schweiger v. China Doll Rest. Inc.,* 138 Ariz. 183, 187–88, 673 P.2d 927, 931–32 (App.1983). At that point, the burden shifted to Rudinsky to demonstrate that particular entries were inappropriate or unreasonable. *State ex rel. Corbin v. Tocco,* 173 Ariz. 587, 594, 845 P.2d 513, 520 (App.1992) (explaining that it is "not enough for an opposing party simply to state, for example, that the hours claimed are excessive and the rates submitted too high") (citations omitted).

¶ 34 The trial court did not abuse its discretion in awarding $27,197 in fees to Green Light. The hourly rates were reasonable. Rudinksy does not point to any specific time entries that are excessive or unreasonable, nor does she identify any entries that were spent defending the defamation claim rather than the contract claim.

## CONCLUSION

¶ 35 Rudinsky's testimony describes a perpetual oral agreement that was not capable of being performed within a year and did not include any term that would allow the parties to terminate the agreement within a year. Because Green Light's alleged contractual

---

3. Rule 54(b) certification should be used sparingly, especially when only one of two claims has been resolved but no party has been granted a judgment on all claims or dismissed from the lawsuit. We encourage trial court judges to proceed cautiously with Rule 54(b) certification under circumstances similar to this case.

liability would necessarily continue beyond one year, the oral agreement cannot be performed within one year and is unenforceable under the statute of frauds. We therefore affirm the trial court's grant of partial summary judgment and the court's award of attorneys' fees in favor of Green Light and against Rudinsky.

¶ 36 Green Light requests its attorneys' fees on appeal in accordance with A.R.S. § 12–341.01(A). In the exercise of our discretion, we decline to award attorneys' fees to Green Light. Green Light is, however, entitled to its taxable costs on appeal, upon its compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge and MARGARET H. DOWNIE, Judge.