NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

MARTIN WOENSDREGT, et al. *Plaintiffs /Appellants-Cross Appellees*,

*v.*

HANDYMAN CONNECTION, *Defendant /Appellee-Cross Appellant.*

No. 1 CA-CV 18-0340
FILED 9-12-2019

---

Appeal from the Superior Court in Maricopa County
No. CV2015-012465
The Honorable Sherry K. Stephens, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

---

COUNSEL

McGill Law Firm, Scottsdale
By Gregory G. McGill
*Counsel for Plaintiff/Appellant-Cross Appellee*

Harry L. Howe, P.C., Scottsdale
By Harry L. Howe
*Counsel for Defendant/Appellee-Cross Appellant*

Lang & Klain, P.C., Scottsdale
By Jason A. Clark
*Counsel for Counterclaimant/Appellee-Cross Appellant*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Jennifer M. Perkins joined.

---

**M c M U R D I E**, Judge:

¶1    Martin Woensdregt and Burt Leibold (collectively "Homeowners") appeal the superior court's denial of their motion for a new trial following a four-day jury trial adjudicating several claims between Homeowners and their contractor, Handyman Connection ("Handyman"). Handyman cross appeals the reduction of its award for attorney's fees on the basis it would cause a hardship. For the following reasons, we affirm the superior court's denial of Homeowners' motion for a new trial, vacate the award of attorney's fees, and remand for the superior court to reconsider the requested attorney's fees according to the parties' contract.

### FACTS AND PROCEDURAL BACKGROUND

¶2    Homeowners entered into a bathroom remodeling contract with Handyman on May 22, 2015. Under the contract, Homeowners were to provide all materials and Handyman would supply the labor for $7125. Homeowners paid $2850 as a down payment, and the parties agreed upon a start date of July 27, 2015. The contract did not specify a completion date, but the parties understood the project would take approximately three weeks.

¶3    When Handyman's craftsman Robert Dickson arrived on July 27, 2015, to begin the project, Homeowners informed Dickson that they wanted to expand the project. Homeowners' expansion included: tiling nearly the entire bathroom with one-by-two-inch glass tile rather than only tiling the shower; changing the light fixtures from recessed cans to a hanging fixture; changing the medicine cabinets to recessed cabinets and running electricity to them; adding additional electric outlets; and changing the switches and outlets throughout the bathroom. The tiling addition alone more than doubled the square footage of the original estimate. Dickson agreed to the expansion of the project and began working without executing a new contract or supplying Homeowners with a revised proposal.

¶4            On August 23, Homeowners emailed Handyman stating that "our handyman is doing a good job for the most part" but complained that the carpet in the bedroom was dirty and the vanity countertops were scratched. In response, Handyman's general manager Allen Hopkins arranged for the carpets to be cleaned throughout the entire house and to have the countertops repaired. By the end of August, Handyman was waiting for Homeowners to receive replacement vanity drawers and additional tile to complete the job. On August 28, Leibold wrote Hopkins:

> I had been in sales, sales management, customer and technical support most of my life and I know that going beyond what the customer expects will always result in a happy, satisfied, repeat customer who will tell many people about their experiences with companies that go the extra mile. I had no idea yours would be one of them and I am so very pleased in the way your [sic] are handling our problems.

He went on to state: "Once the tile is completed and we finish the painting . . ., it will be a standout bathroom."

¶5            On August 30, Leibold contacted Handyman stating that he had discovered a crack—later determined to be a scratch—in the 20-year-old bathtub that he believed was "probably caused" by Handyman. Leibold stated he did not know whether Handyman was responsible for the scratch. Nevertheless, Handyman hired a company to repair it, and Leibold indicated that he was "very satisfied" with the result.

¶6            Around this time, Dickson provided Homeowners with a summary of the hours expended for the expanded project, which represented $5560. Dickson testified that he gave Woensdregt the information without issue, but when Dickson returned the next morning, Woensdregt's attitude and demeanor changed.

¶7            On September 1, 2015, four days after stating how pleased he was with Handyman's service, Leibold sent Hopkins a lengthy email detailing his dissatisfaction. Leibold asserted—among other things—that Dickson never "present[ed] [Homeowners with] any paperwork for amendments to the job in writing, dated and signed by the craftsman and customer per the [contract]"; and that Dickson failed to "protect areas surrounding with drop cloths and plastic, as needed." He also informed Hopkins that he would not discuss any of the additional labor charges until the "job is completed to our satisfaction within a preapproved time frame."

¶8         All through September, Handyman worked to resolve Homeowners' complaints. However, each repair generated new grievances. For example, although Handyman repaired the countertops, Homeowners were still unhappy, so Handyman offered a credit or to have the countertops replaced. Homeowners first wanted the credit but later decided Handyman should replace the countertops or suggested: "at this rate it actually might just be cheaper for [Handyman] to buy new vanities and have them professionally installed." They also requested Handyman replace the bathtub because of the scratch, even though they were not sure it was caused by Handyman, claiming they were unhappy with the repair.

¶9         Although the agreement was for Handyman to provide the labor and Homeowners to provide the materials, Homeowners consistently held Handyman responsible for problems with the materials. The vanities Homeowners purchased for the project were "floating" vanities that were to fit inside an alcove area on the bathroom wall. The vanity drawers, however, were flush with the side of the vanity and would slide against the wall when they were opened or closed. Handyman offered to remove the drawer faces and trim the sides so they could adequately function within the allotted space. Homeowners were not happy with the result. So, Handyman ordered new drawer fronts from the manufacturer and again modified them to work correctly. Homeowners then complained that the new drawer faces had blemishes, admittingly not caused by Handyman, but asserted that, because Handyman caused the need for a replacement, it was Handyman's responsibility to fix them. Homeowners also complained of chips on the glass shelves for the medicine cabinet that Homeowners provided. Hopkins contacted the manufacturer and replaced the shelves. In one email, Woensdregt warned Hopkins that: "By the time this bathroom is done, the house will need an other [sic] carpet cleaning…or maybe we'll switch to tile…ha!"

¶10         By the beginning of October 2015, Hopkins offered to provide Homeowners a credit instead of more repairs but remained willing to work with Homeowners to fix the problems if they preferred. On October 4, Homeowners wrote that they were going to their vacation cabin and they would notify Handyman of how they would like to proceed when they returned the following week. Leibold later testified that they did not intend to allow Handyman to complete the project, and were preparing to take legal action. After visiting with an attorney on October 10, Homeowners filed a four-count complaint against Handyman alleging: (1) breach of contract; (2) negligent misrepresentation; (3) consumer fraud seeking punitive damages; and (4) promissory estoppel. Homeowners requested more than $200,000 in total damages. They also sought an award of

attorney's fees under Arizona Revised Statutes ("A.R.S.") section 12-341.01 and "under law."

¶11   Handyman contacted Homeowners and offered to accept Leibold's final offer that both parties "walk away." Homeowners did not accept that offer and, instead, opted to continue with the lawsuit. In its answer, Handyman filed a counterclaim alleging breach of contract and unjust enrichment. In April 2016, Handyman served Homeowners with a written offer of judgment for $2501, agreeing to waive recovery of attorney's fees, and dismiss the counterclaim. Homeowners declined.

¶12   In July 2016, Homeowners filed a complaint with the Arizona Registrar of Contractors ("ROC"). The ROC sent Jack Grimm to inspect the bathroom in October. Grimm testified that after inspecting Homeowners' property, he issued a directive for Handyman to complete the project and make specific corrections to comply with proper workmanship standards. After the first directive, Homeowners contacted Grimm's supervisor raising additional issues, and Grimm went back to the residence for another inspection. Grimm issued an addendum based on Homeowners' new complaints. Grimm testified that he could not know if some of the problems, like the scratches on the countertop, were caused by Handyman, or made in the year before his inspection.

¶13   Although Handyman's license classification previously permitted it to do small electrical and plumbing work before beginning Homeowners' remodel, the ROC had recently limited the scope of the license and Handyman was no longer authorized to perform electrical and plumbing. Nevertheless, Grimm did not find any defects in the electrical or plumbing work performed by Handyman.

¶14   Handyman agreed to make the corrections per the directive, but Homeowners refused Handyman access to complete the work. The ROC closed the complaint without taking any disciplinary action against Handyman's license. Homeowners testified that, even at the time of filing the ROC complaint, they never had any intention to cooperate and allow Handyman to complete or remedy their perceived problems.

¶15   During the four-day trial, the parties presented evidence of the above-described events, and the jury issued a defense verdict on all claims and awarded Handyman $8835 in damages on its breach of contract counterclaim. Homeowners moved for the court to set aside the verdict and grant a new trial under Rule 59 of the Arizona Rules of Civil Procedure

("Rule"), claiming that the jury ignored evidence and the verdict was contrary to the weight of the evidence.

**¶16** Handyman submitted its application for attorney's fees. It had retained separate counsel for the two actions. As the defendant, Handyman requested attorney's fees of $79,794.25, and as the counterclaimant for $30,522.50. Handyman claimed that it was entitled to fees according to the parties' contract, or in the alternative, under A.R.S. § 12-341.01. The contract stated:

> The customer agrees to pay all collection fees/legal fees/court costs should nonpayment result in action to collect the debt. Interest on unpaid balances accrues at 1 1/2% per month.

**¶17** Homeowners' objection to the fee application argued the same issues raised in their Rule 59 motion—that numerous admissions of breach by Handyman and its expert at trial rendered the verdict "arbitrary and unjust." Concerning the fees, Homeowners argued, without further explanation that "[t]here was no mandatory fee provision in the contract. Thus, on this record fees are discretionary with the trial court under ARS 12-341.01(A)." They argued that fees were not justified under A.R.S. § 12-341.01 because "two of the three trial claims were in tort not contract" and that granting the entire fee award would cause them hardship. As support, Woensdregt and Leibold submitted declarations stating that each was unemployed; had health problems; and, Woensdregt claimed that granting the fee award in full would force him into Chapter 7 bankruptcy, while Leibold claimed it would "force [him] to consider" a Chapter 7 bankruptcy.

**¶18** The court found that Handyman was entitled to fees under both A.R.S. § 12-341.01(A) and the parties' contract but limited the award of attorney's fees to Handyman as a defendant to $29,700, and as counterclaimant to $22,000. Homeowners timely appealed the court's denial of the Rule 59 motion and Handyman timely cross appealed the award of attorney's fees. We have jurisdiction under A.R.S. § 12-2101(A)(1) and (A)(5)(a).

## DISCUSSION

**¶19** On appeal, Homeowners argue that the court abused its discretion by denying its motion for a new trial because no evidence supports a defense verdict on Homeowners' breach of contract claim. Handyman responds noting that the jury instructions allowed the jury to

find that Handyman did not commit a material breach because the law required that Homeowners provide Handyman with the opportunity to cure, but Homeowners failed to do so. Handyman cross appeals the superior court's fee award, contending the court erred by reducing its award of attorney's fees for hardship without sufficient evidence that granting the full fee request would cause a hardship.

## A. The Superior Court Did Not Err By Denying Homeowners' Motion for a New Trial.

¶20 Homeowners argue that the "jury was clearly confused, and the verdict that Handyman did not breach the 3-week remodel contract on this trial record was an arbitrary miscarriage of justice." Homeowners' contend that the jury ignored the evidence at trial, including numerous admissions of breach by Handyman and its expert. Handyman responds that, although it agreed that there had been quality issues that were addressed and were continuing to be addressed, the problems did not rise to the level of a material breach and they were denied the right to resolve any claimed breach. Handyman notes that the jury instruction correctly stated that:

> A contractor has the right to cure its allegedly deficient work, and the contractor must be afforded a reasonable opportunity to cure those alleged defects. No curable breach can be deemed sufficiently material to warrant termination of the contract without the breaching party first having been given notice of and an opportunity to cure the breach.

Handyman also asserts that sufficient evidence supports the jury's finding. Homeowners did not appeal from the law encompassed in the instruction.

¶21 "Ordinarily the victim of a minor or partial breach must continue his own performance, while collecting damages for whatever loss the minor breach has caused him; the victim of a material or total breach is excused from further performance." *Zancanaro v. Cross*, 85 Ariz. 394, 400 (1959) (citation omitted). Homeowners claim that Handyman's admissions are sufficient for this court to hold that—as a matter of law—Handyman breached the contract, and remand for the superior court to enter judgment in their favor for the breach of contract claim and conduct further proceedings to determine damages.

¶22 The court, when denying Homeowners' motion for a new trial, found that "substantial evidence support[ed] the verdict." The superior court may grant a motion for a new trial when the verdict "is not

supported by the evidence." Ariz. R. Civ. P. 59(a)(1)(H). We review the superior court's denial of a motion for a new trial for an abuse of discretion. *State v. Fischer*, 242 Ariz. 44, 48, ¶ 10 (2017). Although the superior court is permitted to reweigh evidence when considering a motion for a new trial, "[a]ppellate courts, by contrast, defer to the factual findings of the jury." *Id.* at 49, ¶ 15. In reviewing the court's denial of a motion for a new trial, "[w]e defer to the discretion of the trial judge who tried the case and who personally observed the proceedings." *Id.* at 50, ¶ 21. And we "generally will not set aside the verdict unless no evidence supports it, even if the verdict seems unjust or the result of prejudice." *Id.* at 49, ¶ 15.

**¶23** Homeowners contend that the following evidence supports its argument that the court erred by denying their motion for a new trial: the contract stated that "craftsmen will protect areas surrounding with drop cloths and plastic, as needed" but Dickson testified that he did not think it was necessary to seal off the bathroom with plastic for this job; Hopkins sent several emails apologizing for "the issues"; the contract "defined job completion as a signed 'work approved' document but no such document was" produced; Dickson and Hopkins admitted that they did not present a change order for the additional tile as required per the contract; Handyman did electrical and plumbing work after the licensing standards changed, no longer permitting Handyman's license type to perform that work; and Handyman's expert witness agreed with some of the ROC findings that the work should have been corrected.

**¶24** Homeowners also argue that the contract stated that all amendments to the scope of work shall be in writing and signed but that neither of them had signed a change order agreeing to a cost for the additional work. And that "it was undisputed at trial that the 3-week bathroom remodel contract was executed by the homeowners on May 22, 2015 with Handyman still at the site on October 4, 2015. Defendant's 4-month tenure on a 3-week remodel bathroom remodel job was clearly a breach . . . and the jury's arbitrary rejection of that unrefuted fact was a manifest injustice and miscarriage of justice."

**¶25** The court found that sufficient evidence supported the jury verdict and we will not disturb that ruling unless *no* evidence supports the decision. *See Fischer*, 242 Ariz. at 49, ¶ 15. To prevail in an action for breach of contract, the plaintiff must prove that: (1) a contract existed; (2) the defendant failed to perform its obligation under the contract; and (3) the failure resulted in damages. *Graham v. Asbury*, 112 Ariz. 184, 185 (1975). Along with the elements for breach of contract, the court also instructed the jury that: "A party to a contract has a duty to act fairly and in good faith,"

requiring "that neither party do anything that prevents the other party from receiving the benefits of their agreement." Rev. Ariz. Jury Instr. (Civil) Contract 16 (5th ed. 2013).

¶26 There was sufficient evidence for a jury to conclude that: Homeowners did not act reasonably by preventing Handyman from receiving the benefit of the agreement; "technical violations" of the contract did not result in damages; and that the parties had orally modified the contract to include the additional materials and work. We will not engage in an item by item analysis of each of Homeowners' complaints and the evidence that supports the verdict for each. Homeowners' issues can be summed up into two categories—delay and quality defects.

¶27 First, Homeowners complain that the three-week project lasted four months and accused Handyman of delaying the start of the project for nine weeks without any explanation for the "inordinate delay" other than "they were busy." But there was not a nine-week delay. Homeowners did not approve the contract until June 10, 2015, and the parties agreed that Handyman would begin work on July 27, 2015. The three-week estimate did not include the additional work that Homeowners requested once the project started. There is no dispute that by October 4, 2015, Homeowners would no longer allow Handyman to complete the project, which was approximately two months from the project start date.

¶28 Next, there was evidence supporting a finding that many of Homeowners' "technical violations" did not result in damages. For example, Homeowners claim that Handyman breached the contract because it performed work without the proper license, but Grimm testified that he did not find any issues with the electrical or plumbing work.

¶29 Finally, the jury heard evidence about Handyman and its efforts to satisfy Homeowners, and there was ample evidence to reasonably conclude that it was Homeowners that prevented Handyman from completing its obligations under the contract.

¶30 Homeowners additionally argue that the verdict was arbitrary and contrary to the weight of the evidence because it awarded Handyman damages for work and materials for which Handyman could not produce a signed change order. Homeowners do not dispute that they requested to expand the project. Homeowners were also aware that Handyman required additional tile to complete the project. Homeowners maintain that they did not sign anything agreeing to a cost as the contract required. Hopkins testified that he tried to work with Homeowners to reach

an amount that was fair to both parties for the additional work that Handyman performed but that the Homeowners refused to discuss it. His testimony is confirmed by the emails. The court correctly instructed the jury that parties to a written contract may alter or modify its terms by a subsequent oral agreement even though the contract precludes oral modification. Again, the jury could reasonably conclude that the parties orally agreed to additional labor and supplies.

¶31        Accordingly, the superior court did not abuse its discretion by denying Homeowners' motion for a new trial.

**B.      Attorney's Fees Requested According to the Parties' Contract are Presumed Reasonable and Should be Granted Absent a Showing to the Contrary.**

¶32        Handyman argues on the cross appeal that the court abused its discretion by reducing its attorney's fees based solely on Homeowners' declarations that awarding the amount requested would cause a hardship. It argues that the declarations alone were not sufficient evidence of hardship and that for the court to reduce otherwise reasonable fees based on hardship, the party asserting financial hardship must submit facts, not just argument, regarding financial hardship, and those facts must be documented by affidavit, declaration, at an evidentiary hearing, or otherwise be evident in the record. *See Rudinsky v. Harris*, 231 Ariz. 95, 102, ¶ 32 (App. 2012); *Woerth v. City of Flagstaff,* 167 Ariz. 412, 420 (App. 1990) ("[T]he party asserting financial hardship has the burden of coming forward with *prima facie* evidence of financial hardship.").

¶33        The court erred if it considered hardship at all when awarding attorney's fees under the contract. When a contract provides for attorney's fees, A.R.S. § 12-341.01 does not apply, and the court will enforce the contract's fee provision according to its terms. *Bennett Blum, M.D., Inc. v. Cowan*, 235 Ariz. 204, 206, ¶ 8 (App. 2014). "Accordingly, a court lacks discretion to refuse to award attorney fees under a contractual provision." *Id.*; *McDowell Mountain Ranch Cmty. Ass'n, Inc. v. Simons*, 216 Ariz. 266, 269, ¶ 14 (App. 2007); *Chase Bank of Ariz. v. Acosta,* 179 Ariz. 563, 575 (App. 1994) ("Unlike fees awarded under A.R.S. § 12-341.01(A), the court lacks discretion to refuse to award fees under [a] contractual provision.").

¶34        Handyman asserted that it was entitled to attorney's fees under the contract and submitted its fee application with an affidavit that complied with the requirements outlined in *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183 (App. 1983). The exhibits to the application

showed a breakdown of fees and costs with contemporaneous records kept by attorneys and paralegals. Attorney's fees requests according to contract are presumed reasonable absent evidence of its unreasonableness. *McDowell Mountain Ranch*, 216 Ariz. at 270, ¶¶ 19–20. Facially reasonable fees will be awarded in full unless the opposing party can show that they were excessive. *Id.* at 271, ¶ 20; *see also State ex rel. Corbin v. Tocco*, 173 Ariz. 587, 595 (App. 1992) (party claiming excessive or unreasonable fees must identify specific entries that it claims are not recoverable).

¶35        Given Handyman's application, the burden shifted to Homeowners to demonstrate that particular entries were excessive or unreasonable. *Rudinsky*, 231 Ariz. at 102, ¶ 33. In their objection in the superior court, Homeowners mostly rehashed their arguments that the verdict was against the weight of the evidence but also argued that: an $8835 judgment does not support an attorney's fees award of $107,160.25; the billing entries made no effort to allocate fees to the contract claim and the fees expended on the tort claims were not compensable; and that the time entries were duplicative, excessive, and lumped together. Homeowners did not cite to specific entries or state facts concerning why the entries were unreasonable.

¶36        In its ruling, the court found that Handyman was entitled to reasonable fees and costs under both the contract and A.R.S. § 12-341.01. The court cited to *McDowell Mountain Ranch* for the proposition that "implicit in any contractual provision for attorneys' fees is a standard of reasonableness even if the contract provides for all attorneys' fees," then proceeded to analyze the claims using the factors outlined in *Associated Indemnity Corp. v. Warner*, 143 Ariz. 567, 570 (1985). The court found that each *Warner* factor weighed in favor of Handyman except that "assessing the total amount of fees requested by Defendant will create a hardship for Plaintiffs who are retired and have no earned income**."** The court then awarded Handyman $29,700 of the $79,794.25 it had requested as the defendant (about a third of the amount requested) and $22,000 of the $30,522.50 it asked for as the counterclaimant (nearly three-quarters of the amount requested).

¶37        The court did not find that the requested fees were unreasonable. From the minute entry, it appears that the court, at least in part, determined the reasonableness of the requested fees following the *Warner* factors. *Warner* factors only apply when the court is exercising its discretion to award fees under A.R.S. § 12-341.01(A). Moreover, on appeal, Homeowners responded to Handyman's entire cross-appeal in one sentence:

Put simply, on the totality of the record, which included the many defense admissions of breach at trial, the trial court was well within its discretion to reduce the fee award to the defense on the complaint and the counterclaim.

Fees requested under a contract are presumed reasonable, and Homeowners did not make specific objections to the superior court concerning why the fees were unreasonable, the court did not find the fees facially unreasonable, *and* Homeowners' refused to address the issue on appeal. We treat Homeowners' failure to address the issue meaningfully as a concession of error. *See McDowell Mountain Ranch*, 216 Ariz. at 269, ¶ 13 (in cases when the appellant has raised a debatable issue, we may treat the failure to respond as a confession of error). Accordingly, we remand for the court to reconsider the award of attorney's fees under the contract without considering hardship to Homeowners.

## C.   **Handyman Is Entitled to an Award of Attorney's Fees on Appeal**.

¶38         Both parties request attorney's fees on appeal. Because Homeowners are not the prevailing party, we deny their request. Handyman is the prevailing party and entitled to attorney's fees under the contract. We award reasonable fees and costs on appeal to Handyman upon compliance with ARCAP 21.

## CONCLUSION

¶39         Accordingly, we affirm the superior court's denial of Homeowners' motion for a new trial, vacate the award of attorney's fees, and remand for the superior court to reconsider the award of requested attorney's fees under the contract.

